IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


| | |
|---|---|
| JULIE TOMBERLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 07-2592-KHV-DWB |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |


REPORT AND RECOMMENDATION


Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding the Commissioner erred in the final decision at issue, the court recommends the Commissioner's decision be reversed and the case be REMANDED in accordance with the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

I.   **Background**

Plaintiff applied for SSI payments on Dec. 4, 2002, alleging she has been disabled since Apr. 1, 2000, and her application was denied initially and on request for reconsideration.  (R. 37, 38,

73-76).  Plaintiff requested and was granted a hearing before an
Administrative Law Judge (ALJ).  (R. 54, 59-63).  On Nov. 10,
2005, plaintiff appeared at a hearing represented by an attorney,
and testimony was taken from plaintiff and from a vocational
expert (VE).  (R. 876-907).  ALJ George Bock issued an unusually
thorough and detailed decision on January 27, 2006 denying
plaintiff's application.  (R. 15-35).  ALJ Bock noted an implicit
request to, and found good cause to, reopen the Nov. 2001 initial
determination on plaintiff's earlier application protectively
filed on Aug. 21, 2001.  (R. 15 & n.1, 36, 69-72).

     In the decision, the ALJ found that plaintiff has not
engaged in substantial gainful activity since her alleged onset
date, and that she has a combination of impairments--including
obesity, diabetes mellitus, asthma, right knee problems and right
ankle sprain, back strain, "status post ligament repair times 2,"
temporomandibular joint syndrome, hypertension, borderline
intellectual functioning, personality disorder with somatic
features, and mild depression--which is "severe" within the
meaning of the Act and the Regulations.  (R. 17 & n.3).  He found
that plaintiff's "migraine headaches, neck/back/hip pains, memory
deficit, vision problems, and venous status condition are not
medically determinable impairments.  Id.  He determined that
plaintiff's mental impairments cause no difficulty in activities
of daily living; no more than moderate difficulty in maintaining

social functioning or in maintaining concentration, persistence, or pace; and no episodes of decompensation; and that plaintiff's impairments either singly or in combination do not meet or equal the severity of any impairment in the Listing of Impairments. (R. 17-18).

The ALJ evaluated the record evidence, considered the credibility of plaintiff's allegations of limitations resulting from her impairments, and evaluated certain medical source opinions regarding the limitations and restrictions resulting from plaintiff's impairments.  (R. 18-32).  He concluded that plaintiff has the RFC for a range of sedentary work, and is required to avoid concentrated airborne irritants, unprotected heights, hazardous machinery, crawling, climbing ropes, ladders, or scaffolds, and work which requires balancing; is allowed to perform other postural activities occasionally; and "is limited to simple, routine unskilled work with no public contact, minimum contact with co-workers, and occasional contact with supervisors."  (R. 32).  The ALJ found that the allegations of plaintiff and her family are not credible.  Id.

The ALJ explained the weight given the opinions of several medical sources.  He gave little weight to the Mar. 2000 opinion of treating physician, Dr. Corder, that plaintiff would be unable to hold any job more than a few months because of depression. (R. 28).  But, as to the period from Apr. 2000 through Apr. 2002,

-3-

he gave controlling weight to Dr. Corder's opinion that plaintiff
was limited to sedentary work.  (R. 29).  As to the period from
Apr. 2000 through Aug. 2001, he also gave controlling weight to
Dr. Schaper's treating source opinion that plaintiff was limited
to "seated work with occasional walking," or "reduced walking."
Id.(quoting Ex. 11F (R. 342. 344)).  He gave "some weight" to the
opinion of plaintiff's treating LSCSW therapist that plaintiff is
not disabled and is able to work.  Id.  Finally, the ALJ noted
the opinion of Dr. Seto, who began treating plaintiff in Nov.
2003, that plaintiff must "elevate her legs 'as much as
possible,'" must rest and recline several hours per day, and must
use a breathing machine four times a day and "'rest for
approximately 45 minutes' after each use," and that plaintiff has
many other physical and mental limitations making her "unable to
'sustain continuous work for 8 hours daily.'" (R. 29-30)(quoting
Ex. 37F (R. 844-46)).  The ALJ found Dr. Seto's opinion not
controlling and gave it little weight.  (R. 31).

The ALJ found plaintiff has no past relevant work, but that
she is able to perform other work in the economy represented by
jobs such as a wire wrapper, an optical goods assembler,
administrative support, and a surveillance systems monitor.  (R.
32-33).  Therefore, he found plaintiff is not disabled within the
meaning of the Act, and denied her applications.  (R. 33, 35).

-4-

Plaintiff disagreed with the ALJ's decision and sought review by the Appeals Council. (R. 12). The Appeals Council considered additional material presented by plaintiff and considered plaintiff's reasons for disagreeing with the decision, but found no reason under their rules to review the decision. (R. 8-11). Therefore, they denied the request for review, and the ALJ decision is the final decision of the Commissioner. Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of the decision.

## II.  Legal Standard

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287

-5-

F.3d at 905 (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  <u>Id.</u>

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 416.920 (2005); <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004); <u>Ray</u>, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920.  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in assessing her RFC, in evaluating the treating physician opinions, in finding her testimony not credible, and in relying on the vocational expert testimony.  The Commissioner argues that the ALJ properly

evaluated the treating physician opinions, properly determined that plaintiff's allegations of limitations are not credible, properly evaluated mental and physical impairments in assessing plaintiff's RFC, and properly relied upon the VE testimony. Finding error in the ALJ's evaluation of the medical source opinions, and in assessing plaintiff's mental impairments, the court recommends the case be remanded.  The court will address plaintiff's arguments in the order they would be reached in applying the sequential evaluation process.

### III. Medical Source Opinions

Plaintiff specifically argued that the ALJ erred in evaluating the opinions of her <u>treating</u> physicians.  (Pl. Br. 48-52).  However, while arguing that the ALJ erred in assessing her RFC, plaintiff also claimed the ALJ failed to discuss the weight accorded to the opinion of the state agency medical consultant-- that plaintiff must periodically alternate sitting and standing.  (Pl. Br. 46).  Therefore, the court will consider whether the ALJ has properly evaluated <u>all</u> of these medical source opinions.

### A.   The ALJ's Findings and the Parties' Arguments

In his step two and step three analysis, the ALJ discussed the severity of plaintiff's mental impairments.  (R. 17-18).  He found:

> claimant's mental impairments cause no difficulty
> performing activities of daily living, no more than
> moderate difficulties in maintaining social
> functioning, and no more than moderate difficulties in

-8-

maintaining concentration, persistence, or pace.  There have been no prolonged, repeated episodes of decompensation and the "C" criteria are not met.

(R. 18)(referring to the paragraph "C" criteria in the Listings for Mental Disorders).

As discussed above, the ALJ explained the weight given the opinions of several medical sources.  He gave little weight to the Mar. 2000 opinion of treating physician, Dr. Corder--that plaintiff would be unable to hold any job more than a few months because of depression.  (R. 28).  The ALJ stated this opinion was given little weight (1) because it was made on Mar. 8, 2000 before plaintiff's alleged onset date of Apr. 1, 2000, (2) because Dr. Corder was not a treating physician after 2002, (3) because Dr. Corder's treating notes contain few, if any, reported complaints or symptoms indicative of ongoing mental impairments, (4) because Dr. Corder did not treat plaintiff's depression or mental impairments, (5) because Dr. Corder did not refer plaintiff for mental health evaluation or treatment, and (6) because "the evidence elicited by consultative psychologists is not consistent with the level of disability asserted."  (R. 28-29).

From Apr. 2000 through Apr. 2002, however, the ALJ gave controlling weight to Dr. Corder's Apr. 2002 opinion that plaintiff was limited to sedentary work.  (R. 29).  He justified this determination because (1) Dr. Corder's treatment notes and

-9-

(2) the remaining evidence of record support the ability to perform sedentary work, and (3) Dr. Corder was plaintiff's primary treating physician between 2000 and 2002.  Id.

For the period from Apr. 2000 through Aug. 2001, the ALJ also gave controlling weight to Dr. Schaper's treating source opinion that due to a right knee impairment plaintiff was limited to "seated work with occasional walking," or "with reduced walking" because (1) Dr. Schaper was a treating physician, and the opinion is consistent with (2) Dr. Schaper's notes and with (3) evidence relating to plaintiff's right knee impairment during the applicable time period.  Id.(quoting Ex. 11F (R. 342. 344)). The ALJ gave "some weight" to the opinion of plaintiff's treating therapist, LSCSW Denise Parker-Timms, (that plaintiff is not disabled and is able to work) because the therapist is a treating source and her opinion is consistent with the medical record. Id.

Finally, the ALJ gave only little weight to the Nov. 8, 2005 opinion of Dr. Seto that plaintiff must "elevate her legs 'as much as possible;'" must rest and recline several hours per day; must use a breathing machine four times a day and "'rest for approximately 45 minutes' after each use;" and that plaintiff has many other physical and mental limitations making her "unable to 'sustain continuous work for 8 hours daily.'" (R. 29-31)(quoting Ex. 37F (R. 844-46)).

The ALJ devoted two pages in his decision to explaining why he discounted Dr. Seto's opinion, and the court has identified at least seven reasons given in support of that determination. (R. 30-31). (1) The ALJ noted that although Dr. Seto is plaintiff's current treating physician, he did not attain this position until Nov. 2003, forty-three months after plaintiff's alleged onset of disability. (R. 30). (2) Dr. Seto's assessment of frequent leg edema is not supported by his treatment notes. Id. (3) "Dr. Seto's office notes do not mention on-going, lower extremity sensation deficits, decreased muscle strength, impaired motor tone, or muscle atrophy." Id. (4) To the extent Dr. Seto attributes limitations to "pre-mature arthritis," his medical records do not support that diagnosis. Id. (5) "Dr. Seto's office notes do not mention on-going decreased spinal/joint range of motion, joint deformity, crepitus, laxity, decreased muscle strength, muscle atrophy, sensation deficits, or abnormal deep tendon reflexes." Id. (6) Dr. Seto opined that plaintiff has limitations concerning mental acuity resulting from medication side effects, but his office notes mention no complaints of such side effects. Id. (7) "The level of treatment, e.g., hospitalizations, emergency room visits, referrals to specialists, etc., does not support the opinion." (R. 32).

Plaintiff claims the ALJ committed errors in weighing the medical opinions. First, she claims the ALJ did not follow the

-11-

correct legal standard and failed to discuss the weight given to the opinion of the state agency medical consultants, as required by Social Security Ruling (SSR) 96-6p.  She claims the ALJ substituted his opinions for the treating physicians' opinions; improperly discounted Dr. Corder's opinion on the bases that the opinion was made before plaintiff alleged disability and Dr. Corder quit treating plaintiff several years before the ALJ's decision; and that the ALJ improperly accorded controlling weight to one of Dr. Corder's opinions which was incomplete.  (Pl. Br. 46-51).  The Commissioner argues that the ALJ properly accorded less than controlling weight to the opinions of Drs. Corder and Seto, and points to evidence in the record tending to support the ALJ's decision.  (Comm'r Br. 15-20).

The court notes that judicial review of the Commissioner's decision is deferential, and it hesitates to find error where the ALJ's rationale is as extensive and detailed as the decision at issue here.  However, the court's review reveals errors as alleged by plaintiff, and although the court does not agree with all of plaintiff's claims, it finds remand is necessary because the ALJ improperly weighed the medical opinions.

### B.    The Standard for Evaluating Medical Opinions

Medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, will be evaluated by the Commissioner in accordance with factors contained in the

-12-

regulations.  20 C.F.R. § 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123 (Supp. 2008).  Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of a claimant's impairments must be treated as expert medical opinions, and will be weighed by the ALJ as the medical opinion of a non-examining source.  20 C.F.R. § 416.927(f); SSR 96-6p, West's Soc. Sec. Reporting Serv., Rulings 129, 130 (Supp. 2008).  An ALJ may not ignore such opinions and must explain in his decision the weight accorded the opinions.  SSR 96-6p, West's Soc. Sec. Reporting Serv., Rulings 130 (Supp. 2008).

A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition.  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  However, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  But, opinions of examining sources are generally given more weight than the opinions of non-examining sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [he] will give it controlling weight." 20 C.F.R. § 416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2008).

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must then determine whether the opinion is consistent with other substantial evidence in the record. Id. (citing SSR 96-2p). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id.

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.

-14-

Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### C.   Analysis

#### 1.   Evaluation of the State Consultant's Opinion

As plaintiff argued, on Mar. 25, 2003 a state agency medical consultant opined that plaintiff must periodically alternate between sitting and standing to relieve pain. (Pl. Br., 46)(citing (R. 489)). The RFC assessed by ALJ Bock found that plaintiff can sit six hours in a workday and stand/walk fifteen minutes at a time for a total of two hours in a workday. (R. 32). Despite the consultant's opinion, the ALJ did not find that plaintiff must alternate sitting and standing, did not state a frequency at which plaintiff must alternate sitting and standing, and did not discuss in any way the limitations opined by the state agency medical consultant. The Commissioner did not address plaintiff's argument regarding the state agency consultant's opinion. As discussed above, an ALJ may not ignore the opinion of a state agency consultant and must explain the weight given the consultant's opinion. Clearly, this was not done here, and the case must be remanded for a proper evaluation of the medical consultant's opinion.

-15-

### 2.   Evaluation of Dr. Corder's Opinions

The court also agrees with plaintiff's claim that the ALJ
improperly weighed the opinions of Dr. Corder.  Dr. Corder was
plaintiff's treating physician from at least Jan. 1999 through
Oct. 28, 2003.  (R. 564, 594).  The ALJ gave "little weight" to
Dr. Corder's opinion on Mar. 8, 2000 that plaintiff could not
hold any job for more than a few months because of her
depression, but gave "controlling weight" to Dr. Corder's Apr. 8,
2002 opinion that plaintiff was substantially limited to
sedentary work only.  (R. 28-29)(citing Ex. 23F (R. 582, 594)).
As one basis for discounting Dr. Corder's opinion regarding
depression, the ALJ stated that the opinion was made before
plaintiff's alleged onset date of Apr. 1, 2000.  (R. 28).  While
the ALJ's statement is true, that fact is irrelevant to the
weight given the opinion, because Dr. Corder stated the opinion
on Mar. 8, 2000, and plaintiff alleges disability onset less than
one month later on Apr. 1, 2000.  Lackey v. Barnhart, 127 Fed.
Appx. 455, 458, 2005 WL 758797, 4 (10th Cir. Apr. 5, 2005)("the
fact that the report precedes the designated disability period is
of limited practical import").

The fact that Dr. Corder formed his opinion (that plaintiff
cannot hold any job for more than a few months) almost a month
before plaintiff alleges that she became disabled cannot detract
from the medical opinion.  Neither the regulations nor common

sense require that the date of disability onset alleged by a
claimant agree with the date a treating physician opines that
claimant is disabled.

The ALJ <u>discounted</u> Dr. Corder's Mar. 2000 opinion, in part
because Dr. Corder was a treating physician only into 2002, but
the ALJ accorded <u>controlling weight</u> to Dr. Corder's Apr. 2002
opinion, in part, because Dr. Corder was a treating physician at
that time.  (R. 28-29).  As noted above, the record reveals that
Dr. Corder treated plaintiff from at least Jan. 1999 (R. 564)
through at least Oct. 28, 2003 (R. 554), thus demonstrating the
factual error in the ALJ's assertion that Dr. Corder did not
treat plaintiff after 2002.  (R. 29).

The fact that Dr. Corder ceased treating plaintiff before
the decision of this case is undoubtedly a factor relevant to
considering the relative weight to be assigned to the opinions of
Dr. Corder and of other physicians who may have treated or
examined plaintiff before or after Dr. Corder, or who may have
treated plaintiff for shorter or longer periods of time than did
Dr. Corder.  However, absent a specific explanation not given in
the decision, it defies reason to discount one of Dr. Corders
opinions <u>and</u> to accord controlling weight to the other opinion of
Dr. Corder <u>both</u> because Dr. Corder was a treating physician until
2002 but not thereafter.

The ALJ did not discuss or explain how (or if) Dr. Corder's two opinions are inconsistent and did not consider whether or how the opinions might be reconciled.  Finally, he did not explain with citation to specific evidence how he determined which opinion should be accepted and which must be rejected.

Plaintiff also asserts it is error to accord controlling weight to Dr. Corder's Apr. 2002 opinion because that opinion was originally given in a seven-page form provided by the state Department of Social and Rehabilitation Services (SRS), yet the record contains only three pages of that form.  (Pl. Br. 50)(citing (R. 581-83)).  While the court recognizes that the three pages referenced in plaintiff's argument are apparently copies of pages 2, 6, and 7 of a seven-page SRS "form," and the record does not contain the remaining four pages of the original "form," that fact does not prevent the ALJ from relying upon the opinion of Dr. Corder reflected therein.  The pages at issue are contained in the administrative record at Exhibit 23F, which consists of Dr. Corder's medical records from Jan. 25, 1999 through Oct. 28, 2003.  (R. 527-94).  In the administrative record, Exhibit 23F is numbered consecutively in the upper right hand corner of each page from 527 through 594, and is numbered consecutively in the lower right hand corner of each page from 1 through 68.  Id.  The pages containing the Apr. 2002 opinion are numbered in the upper right hand corner from 581 through 583, and

-18-

in the lower right hand corner from 55 through 57.  (R. 581-83).
Thus, it is evident that the pages at issue are the same as those
in the records maintained by Dr. Corder and submitted to the
Commissioner.  Plaintiff presents neither argument nor evidence
that the pages at issue are not the correct and complete records
provided by Dr. Corder.  The fact that the original "form" of
which the pages at issue are copies contained four other pages is
irrelevant to the issue of Dr. Corder's opinion.  These are the
relevant pages of the seven-page form selected by Dr. Corder and
included in his treatment records.  The "other" four pages were
not.  The record as kept by Dr. Corder and forwarded to the
Commissioner makes clear that Dr. Corder believed plaintiff was
limited to sedentary work.  Plaintiff presents no evidence to the
contrary.  There is simply no evidence that the "other" four
pages of the SRS "form" were somehow lost or misplaced or that
those pages contained information suggesting that the opinion
stated in the pages at issue is anything other than the complete
opinion of Dr. Corder formed in Apr. 2002.  Therefore, it was
appropriate for the ALJ to rely upon the Apr. 2002 opinion of Dr.
Corder.

    Nonetheless, the Mar. 2000 opinion of Dr. Corder may be at
odds with the Apr. 2002 opinion.  The ALJ gave little weight to
Dr. Corder's Mar. 2000 opinion and controlling weight to Dr.
Corder's Apr. 2002 opinion, but his explanation for doing so is

not supported by substantial evidence in the record.  For
example, as discussed above, the ALJ justified both
determinations by explaining that Dr. Corder was plaintiff's
treating physician when plaintiff applied for SSI payments, but
not when the decision was made in this case.  Remand is necessary
for the Commissioner to properly explain his evaluation of Dr.
Corder's apparently conflicting opinions, and to support his
explanation with citation to specific evidence in the record.

### 3.  Evaluation of Dr. Seto's Opinion

Plaintiff claims it was error for the ALJ to reject Dr.
Seto's opinions:  that plaintiff must elevate her legs several
hours a day; and that plaintiff must use a breathing machine four
times a day, requiring forty-five minutes of rest after each
treatment.  (Pl. Br. 48-49).  She argues the ALJ improperly
excluded all evidence of acute exacerbations and improperly
shifted the burden of proof to plaintiff by stating that the
record does not include evidence of certain signs or laboratory
findings supporting Dr. Seto's opinions.  Id. at 49(citing
Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993); and
Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988)).  Finally,
plaintiff argues that the ALJ improperly substituted his own lay
opinions for those of the treating physician.  (Pl. Br. 51).  The
Commissioner argues that the record evidence supports the ALJ's
determination to discount Dr. Seto's opinions because, as the ALJ

noted, Dr. Seto consistently reported no edema on examination of plaintiff, and Dr. Seto's treatment records do not support a need to use a breathing machine.  (Comm'r Br. 19-20).

As a preliminary matter, the court notes that plaintiff is mistaken regarding the burden of proof in an SSI case such as this.  It is plaintiff's burden to present evidence that she is unable to perform her previous work.  42 U.S.C. § 1382c(a)(3)(B). The Tenth Circuit has interpreted this burden to apply to plaintiff through the fourth step of the sequential evaluation process.  Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988)(citing Huston, 838 F.2d at 1132).  After plaintiff meets her burden through step four of the process, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy." Lax, 489 F.3d at 1084(quoting Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)).

Thus, if plaintiff fails to present evidence of a medical sign, symptom, or finding necessary to justify reliance upon the medical opinion of her treating physician (which is evaluated before step four of the sequential process), the Commissioner may find that plaintiff has not met her burden to establish disability.  Therefore, it is not error for the ALJ to rely upon the lack of necessary information in his analysis through step

four of the process.  The cases cited by plaintiff do not require
a different conclusion.

In Thompson, the court specifically noted that "[t]he first
four steps are not at issue here," and that the ALJ "proceeded to
step five of the five-part sequential evaluation process."
Thompson, 987 F.2d at 1486-87.  In Thompson, the ALJ determined
at step five based on the "absence of contraindication in the
medical records," that Ms. Thompson could do the full range of
work at the sedentary exertional level.  Id. at 1491(emphasis in
original).  It was in this context that the court noted the ALJ
had effectively shifted the burden to Ms. Thompson, and stated,
"It is not her burden, however, to prove she cannot work at any
level lower than her past relevant work; it is the
[Commissioner's] burden to prove that she can."  Id.  This is a
correct statement of the law.

Nonetheless, plaintiff here must meet her burden through
step four of the evaluation process.  Thereafter, it is not her
burden to prove she cannot work at any other jobs requiring a
lower level of exertion.  As the Thompson court stated, it
becomes the Commissioner's burden at step five to prove that
plaintiff can perform other work.  The Huston opinion, relied
upon by the Thompson court, and cited by plaintiff, is to the
same effect.  "[O]nce the claimant has made a prima facie showing
of inability to return to past relevant work because of a severe

-22-

medical impairment, the [Commissioner] must shoulder the burden
of proof to show that the claimant can perform other work on a
sustained basis." Huston, 838 F.2d at 1132.  The court finds the
ALJ did not err in placing the burden on plaintiff to point to
evidence supporting the treating physician's medical opinions.

That finding, however, does not establish that the ALJ
properly evaluated Dr. Seto's opinions.  Plaintiff claims the ALJ
merely substituted his lay opinion for the medical opinion of Dr.
Seto, and the court agrees.  The decision mentions no medical
opinion directly contrary to Dr. Seto's opinion.  The ALJ
accorded controlling weight for the period from Apr. 2000 through
Apr. 2002 to the opinion of Dr. Corder (that plaintiff could
perform sedentary work).  He accorded controlling weight for the
period from Apr. 2000 through Aug. 2001 to Dr. Schaper's opinion
(that plaintiff could do sedentary work).  However, as limited by
the ALJ, those opinions are not controlling during the period in
which Dr. Seto treated plaintiff, beginning Nov. 2003.
Therefore, they are not contrary to Dr. Seto's opinion.

The ALJ accorded "some weight" to the opinion of plaintiff's
mental health therapist that plaintiff can work.  However, the
therapist is a mental health provider, and her opinion relates to
plaintiff's mental condition, not her physical condition.
Therefore, the therapist's opinion is not contrary to Dr. Seto's
opinion regarding plaintiff's physical capabilities.

While it might be argued that the opinions of the state agency medical consultants are contrary to Dr. Seto's opinions, the ALJ did not discuss the opinions of the state agency medical consultants, and did not find them to be contrary to Dr. Seto's opinions.  Moreover, the opinions of the state agency medical consultants are dated Nov. 15, 2001 (R. 298-305) and Mar. 25, 2003.  (R. 488-96).  The fact that the ALJ limited application of Dr. Schaper's opinion and Dr. Corder's opinion to the time frame before 2002 suggests that he perceived a change in plaintiff's condition after that time and suggests that one or both of the medical consultants' RFC assessments should also be limited in application.  However, because the ALJ did not discuss the medical consultants' opinions, any consideration by the court of the ALJ's findings in that regard would be mere speculation.  The court finds the decision under review contains no discussion of any medical opinion which is contrary to Dr. Seto's opinions.

The ALJ discounted Dr. Seto's opinions (among other reasons):  because "Dr. Seto's office notes do not mention on-going, lower extremity sensation deficits, decreased muscle strength, impaired motor tone, or muscle atrophy;" because Dr. Seto's medical records do not support the diagnosis of "premature arthritis;" because "Dr. Seto's office notes do not mention on-going decreased spinal/joint range of motion, joint deformity, crepitus, laxity, decreased muscle strength, muscle

-24-

atrophy, sensation deficits, or abnormal deep tendon reflexes
(R. 30); and because "[t]he level of treatment, e.g.,
hospitalizations, emergency room visits, referrals to
specialists, etc., does not support the opinion."  (R. 32).
However, there is no citation in the decision at issue to medical
authority to support these reasons for discounting Dr. Seto's
opinions.  Bolan v. Barnhart, 212 F. Supp. 2d 1248, 1262 (D. Kan.
2002)("ALJ is not a medical expert on identifying clinical signs
typically associated with" a medical condition and "is not
entitled to sua sponte render a medical judgment of what he
thinks are the clinical signs typically associated").  There is
no medical authority (medical opinion, medical treatise, or
administrative notice of medical facts) cited in the decision
here from which it may be concluded that the medical symptoms,
signs, or findings suggested by the ALJ must be present in the
record or treatment notes in order to support the opinions stated
by Dr. Seto, or that a greater level of treatment must be
indicated by the evidence if Dr. Seto's opinion is to be
credited.  There is no medical authority in the record or cited
by the ALJ that lower extremity sensation deficits, decreased
muscle strength, impaired motor tone, muscle atrophy, decreased
spinal/joint range of motion, joint deformity, crepitus, laxity,
decreased muscle strength, muscle atrophy, sensation deficits, or
abnormal deep tendon reflexes are signs, symptoms, or findings

which are necessary to a medical opinion of the nature or severity of that held by Dr. Seto.  There is no medical authority in the record or cited by the ALJ that the frequency of hospitalizations, emergency room visits, or referrals to specialists reflected in the evidence or in Dr. Seto's treatment notes is insufficient to support Dr. Seto's medical opinions.

Lacking citation in the decision to a basis in medical authority for the assertions made, the court must conclude that the ALJ substituted his own lay opinion for the medical opinion of Dr. Seto.  It is error for an ALJ to "interpose his own 'medical expertise' over that of a physician." Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir. 1987).

Remand is necessary for the Commissioner to properly weigh all of the medical opinions of record in accordance with the legal standard as explained above.  If the Commissioner is to find that the medical signs, symptoms, or laboratory findings are contrary to or will not support the opinion of a medical source, particularly a treating source, he must cite medical authority for that finding.

## IV.  Residual Functional Capacity Assessment

Plaintiff claims the ALJ erred in assessing her RFC in that he improperly evaluated both her mental impairments and her physical impairments.  With regard to evaluation of plaintiff's physical impairments, each argument made by plaintiff (save one)

relates to a medical opinion and will undoubtedly be affected by a proper evaluation of the medical opinions as discussed above. The court will not presume to direct a result in the Commissioner's evaluation of the medical opinions.

Plaintiff's remaining argument relates to obesity, which the ALJ found to be severe, but (as plaintiff alleges) the ALJ did not make any specific discussion of the effect obesity has on the RFC assessed.  On remand plaintiff may make her argument regarding obesity, and the decision must show that plaintiff's obesity was considered and must explain how the evidence supports the RFC assessment.

The court next addresses plaintiff's claims regarding evaluation of her mental impairments.  Plaintiff noted that the ALJ found severe mental impairments including borderline intellectual functioning, personality disorder, and mild depression, and found that as a result of her mental impairments plaintiff has moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace.  (Pl. Br. 41, 43).  She claims that the ALJ failed to discuss evidence favorable to plaintiff's claim of mental impairments, failed to connect specific evidence to his conclusions, and failed to include moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence,

or pace in the RFC ultimately assessed.  (Pl. Br. 43).  The
Commissioner noted that the ALJ found plaintiff's mental
capabilities limited her to simple, routine, unskilled work with
no public contact, minimum contact with co-workers, and
occasional contact with supervisors,[1] and impliedly argued that
these restrictions reflect proper consideration of plaintiff's
mental impairments.  (Comm'r Br. 26-27).

### A.   Standard for Evaluating Mental Impairments

The Commissioner has promulgated a Psychiatric Review
Technique for evaluating mental impairments.  20 C.F.R.
§ 416.920a.  In evaluating the severity of mental impairments at
steps two and three of the evaluation process, the technique
provides for rating the degree of functional limitation in each
of four broad functional areas:  activities of daily living;
social functioning; concentration, persistence, or pace; and
episodes of decompensation.  Id. § 416.920a(c).  After rating the
degree of limitation in each functional area, the Commissioner
determines the severity of plaintiff's mental impairments.  Id.
§ 416.920a(d).

If the mental impairments are severe, the technique requires
an evaluation of whether the impairment(s) meets or equals a

---

[1]The Commissioner specifically mentioned only limitations to
routine, unskilled work (Comm'r Br. 27), but the court recognizes
the RFC assessed by the ALJ included additional limitations
resulting from mental impairments.  (R. 32).

listed impairment by comparing the step two findings and the
medical evidence with the paragraph A, B, and C criteria of the
listings.  Id. § 416.920a(d)(2).  If the Commissioner determines
that plaintiff's mental impairments do not meet or equal a
listing, he then assesses plaintiff's RFC.  Id. § 416.920a(d)(3).

In determining RFC, the regulations provide that the
Commissioner will consider plaintiff's "ability to meet the
physical, mental, sensory, and other requirements of work."  Id.
§ 416.945(a)(4).  The regulations provide that "[a] limited
ability to carry out certain mental activities, such as
limitations in understanding, remembering, and carrying out
instructions, and in responding appropriately to supervision, co-
workers, and work pressures in a work setting, may reduce
[plaintiff's] ability to do [work.]"  Id. § 416.945(c).

The Commissioner has clarified the difference between
evaluating the severity of mental limitations at steps two and
three based upon the broad functional areas identified in the
psychiatric review technique, and evaluating the ability to meet
mental demands of jobs at steps four and five.  SSR 96-8p, West's
Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2008).  "The mental
RFC assessment used at steps 4 and 5 of the sequential evaluation
process requires a more detailed assessment by itemizing various
functions contained in the broad categories found in" the four
functional areas.  Id.  RFC must be expressed in terms of work

-29-

related function.  <u>Id.</u> at 148.  "Work-related mental activities
generally required by competitive, remunerative work include the
abilities to:  understand, carry out, and remember instructions;
use judgment in making work-related decisions; respond
appropriately to supervision, co-workers and work situations; and
deal with changes in a routine work setting."  <u>Id.</u> at 149.  The
Ruling also includes narrative discussion requirements for the
RFC assessment.  <u>Id.</u>  The discussion is to cite specific medical
facts to describe how the evidence supports each RFC conclusion,
discuss how the plaintiff is able to perform sustained work
activities, and describe the maximum amount of each work activity
the plaintiff can perform.  <u>Id.</u>  The discussion must include an
explanation how any ambiguities and material inconsistencies in
the evidence were considered and resolved.  <u>Id.</u>

### B.   The ALJ's Findings

At step two and step three of the sequential evaluation
process, the ALJ found that plaintiff has severe mental
impairments, and that plaintiff's mental impairments cause
moderate difficulties in maintaining social functioning and
moderate difficulties in maintaining concentration, persistence,
or pace, but that plaintiff's mental impairments do not meet or
equal the severity of a listed impairment. (R. 17-18).  In
summarizing the medical evidence, the ALJ also discussed record
evidence relating to plaintiff's mental impairments. (R. 19-20,

22-23).  In particular, the ALJ noted that plaintiff described a
long history of emotional problems, but suggested little mental
health treatment.  He noted that in June 1999 plaintiff claimed
to be seeing a counselor twice a week and taking Effexor.  (R.
19).  He also stated, however, that the record revealed mental
health treatment only between Aug., 2003 and Feb., 2004.  (R.
23).  He noted numerous instances of contact with medical
personnel where plaintiff did not claim, or the record did not
show mental health problems.  (R. 19-20, 22-23).  He stated that
plaintiff did not take prescription medication for depression
until late 2003 and thereafter.[2]   (R. 26-27).   The ALJ noted
that plaintiff reported that she had attempted suicide in the
past, but that her stories were different, reporting that she had
attempted suicide once, twice, or four times to different medical
providers.  (R. 28).  The ALJ cited and gave "some weight" to the
report of plaintiff's therapist "that she 'was unable to check
off that [the claimant] was disabled and unable to work and would
not benefit from treatment or medications.'" (R. 29)(citing (Ex.
24F (R. 598)))(brackets in the decision).  Finally, the ALJ
concluded in his RFC assessment that plaintiff "is limited to
simple, routine unskilled work with no public contact, minimum

---

[2]As plaintiff argues, Dr. Corder's medical records dated
Apr. 6, 1999 show that plaintiff was "Going to FCMH [Franklin
County Mental Health]," and taking Effexor.  (Pl. Br. 43)(citing
(R. 572)).  Thus, the decision reflects ambiguities whose
resolution was not explained by the ALJ.

contact with co-workers, and occasional contact with supervisors." (R. 32).

### C.   Analysis

Plaintiff's argument that the ALJ erred in failing to include in the RFC assessment a finding that plaintiff has moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace is without support in the law. As plaintiff argues, the ALJ found these limitations in making his severity analysis at step two and step three of the evaluation process. Based in part upon these findings, the ALJ concluded that plaintiff has severe mental impairments but that those impairments do not meet or equal the severity of a listed impairment. Plaintiff does not allege error in these findings. As SSR 96-8p makes clear, there is a difference between evaluating the severity of mental limitations at steps two and three based upon the four broad functional areas identified in the psychiatric review technique and evaluating the ability to meet mental demands of jobs at steps four and five. Evaluating RFC requires a more detailed assessment of work-related mental functions such as the abilities to understand, carry out, and remember instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, co-workers and work situations; and to deal with changes in a routine work setting. Therefore, an

-32-

ALJ should not state a mental RFC in terms of the four broad mental functional areas, but should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand.  Contrary to plaintiff's allegation of error, SSR 96-8p makes clear that it would have been error for the ALJ to directly include his findings regarding the four broad mental functional areas in his final RFC assessment.

Nonetheless, the court agrees with plaintiff that the ALJ failed to connect the specific record evidence to his mental RFC conclusions.  As summarized above, the ALJ applied the psychiatric review technique at step two and step three of the sequential evaluation process and concluded that plaintiff has severe mental impairments but that plaintiff's impairments do not meet or equal the severity of a listed impairment.  He then summarized the record evidence regarding plaintiff's mental impairments, found plaintiff's allegations not credible, and accorded "some weight" to the opinion of plaintiff's mental health therapist.  Finally, he stated his RFC assessment, concluding that plaintiff "is limited to simple, routine unskilled work with no public contact, minimum contact with co-workers, and occasional contact with supervisors."  (R. 32).

What is missing is that the ALJ failed to cite specific medical facts to describe how the evidence supports each mental RFC conclusion, failed to discuss how the plaintiff is able to

-33-

perform sustained mental work activities, and failed to describe
the maximum amount of each mental work activity the plaintiff can
perform as required by SSR 96-8p.  He did not explain how
ambiguities and material inconsistencies in the evidence
regarding mental impairments were considered and resolved.  The
ALJ summarized the evidence upon which he based his RFC
assessment and stated his conclusion regarding mental RFC.  But,
he did not explain how specific evidence leads to and supports
the RFC assessed.  He did not cite evidence which demonstrates
that plaintiff is capable of performing simple, routine,
unskilled work even though she is not able to perform more
complex work.  He did not explain how the evidence supports a
finding that plaintiff is unable to perform work requiring
contact with the public, but is able to perform work requiring
minimal contact with co-workers, and yet is only able to work
with occasional contact with supervisors.  Remand is necessary
for the Commissioner to provide a proper narrative discussion as
required by SSR 96-8p.

**V.    Remaining Allegations**

Plaintiff also alleges error in the credibility
determination and in relying upon the testimony of the vocational
expert presented at the ALJ hearing.  However, plaintiff's
credibility argument is based in part upon a proper evaluation of
her mental impairments, and her vocational expert argument is

-34-

based in part upon a proper evaluation of the medical opinions.
Since remand is necessary for a proper evaluation of plaintiff's
mental impairments and for a proper evaluation of the medical
opinions, it would be premature at this time to address
plaintiff's arguments regarding the credibility determination or
the vocational expert testimony.  Plaintiff may make these
arguments to the Commissioner on remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision
be REVERSED, and that judgment be entered pursuant to the fourth
sentence of 42 U.S.C. § 405(g) REMANDING the case for further
proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered
to counsel of record for the parties.  Pursuant to 28 U.S.C.
§ 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the
parties may serve and file written objections to this
recommendation within ten days after being served with a copy.
Failure to timely file objections with the court will be deemed a
waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d
1116, 1119 (10th Cir. 2005).

Dated this 16th day of December 2008, at Wichita, Kansas.


                              s/Donald W. Bostwick
                              **DONALD W. BOSTWICK**
                              **United States Magistrate Judge**